**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JULIAN HERNANDEZ | CIVIL ACTION NO. 24-1112 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

# MEMORANDUM RULING

Pending before the Court is a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), Record Document 22, filed by the City of Shreveport. For the reasons assigned herein, the motion is **GRANTED**.

## Factual Background

On August 20, 2023, the plaintiff, Julian Hernandez ("Hernandez"), and several of his friends were in downtown Shreveport on the 400 block of Commerce Street when a verbal altercation broke out between his friends and another group of individuals. Record Document 1 at 2. The verbal altercation escalated to a physical fight, and a gun was drawn. *Id*. Before the situation escalated further, someone called the Shreveport Police, and officers arrived to find a large group of people. *See Id*. and Record Document 22-2 at 1. Police requested everyone to remain at the scene as they sorted out what happened. Record Document 1. Hernandez maintains that he was not part of the fighting, he assisted police in determining the facts, and he remained at the curb as directed by police. *Id.* at 2.

After approximately 20 to 30 minutes, Hernandez asked an officer, later identified as Defendant Officer Brent Ouzts ("Officer Ouzts"), for permission to leave the area, and such permission was initially granted. Before he could leave, however, Officer Ouzts asked Hernandez for identification. Believing he was not being detained or arrested, and in fact had been given permission to leave, Hernandez declined to provide any identification to Officer Ouzts. According to Hernandez, Officer Ouzts then grabbed him by the arm and forcefully threw him down to the concrete street, allegedly causing injuries to Hernandez's face, septum, back and neck. *Id.* at 3. Hernandez subsequently initiated this action claiming violations of his rights under both the United States and Louisiana constitutions and Louisiana state law, naming as defendants Officer Ouzts and the City of Shreveport.

**Law and Analysis**

**A. Federal Rule of Civil Procedure 12(c) Standard.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Importantly, the statement must "show" that the pleader is entitled to relief, merely "alleging" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.")(internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Any party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings follows the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018). To withstand a motion to dismiss or for judgment on the pleadings, a complaint must contain sufficient factual matters, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere above possibility but below probability. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.[1]

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and

---

[1] From the time the Federal Rules of Civil Procedure were instituted in 1938, until 2007, when the Supreme Court announced its holding in *Twombly*, courts generally looked to *Conley v. Gibson,* 355 U.S. 41 (1957), and its "no set of facts" rule for guidance in determining whether a pleading was sufficient to survive a motion to dismiss. "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46 (alteration added). That practice hit a brick wall in *Twombly* when a divided court elevated the level of factual support a pleading must facially include, to make the claim actually plausible, not just possible under some yet-to-be-determined set of facts. *Twombly* 550 U.S. at 570. The "short and plain statement" became a bit less short.

common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprising "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations and internal quotations omitted). While *Twombly* and its progeny require sufficient factual pleading to make a claim plausible, and not just possible, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008)(citations and internal quotations omitted).

**B. Discussion and Analysis.**

In his complaint, Hernandez alleges *inter alia* that "[b]ecause the Defendant City has delegated all policy-making authority regarding police operations to the Chief of Police, the City is responsible for such policies or practices, or customs that have become tantamount to policies, which have been made, continued, or otherwise carried out by the Chief of Police in accordance with which the acts and omissions described herein have caused injury to the Plaintiff." Record Document 1 at 4. He then lists a total of eight alleged policies that he claims violate Section 1983, *viz*:

1) A history of reckless disregard for probable cause requirements in searching property and making arrests;

2) A history of recklessness in the use of and a complete disregard for any prohibitions against the use of unnecessary and excessive force;

3) A history of deliberate indifference to the serious medical needs of arrestees;

4) By consistently refusing to take steps to terminate abusive practices, including arrest without cause, invasion of the privacy of citizens without any type of warrant or consent, unlawfully punishing persons by means of excessive, unnecessary and unwarranted physical and verbal force and abuse, deliberate indifference to prisoners' serious medical needs, and by defending and providing pretexts for the same;

5) By not disciplining or otherwise properly supervising police officers, including Defendant Ouzts, who engaged in said practices;

6) A failure to adequately train their law enforcement personnel, including the individual law enforcement Defendant named herein, with regard to proper constitutional and statutory limits and duties of the exercise of their authority, instead sanctioning and encouraging or ignoring said practices;

7) A failure to promulgate training policies and practices to prevent the occurrences of which Plaintiff complains, and

8) Facilitating and thus condoning and approving such conduct as has been shown, by deliberately turning a blind eye towards such conduct, with a deliberate indifference to the effect that said policies and practices have upon the constitutional rights of persons including the Plaintiff herein.

*Id.* at 5.

Title 42, United States Code, Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit, in equity, or other proper proceeding for redress….

The Supreme Court, in *Monell v. Department of Social Services,* 436 U.S. 658 (1978), extended this cause of action to include actions against municipalities and local government agencies "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. To establish municipal liability under Section 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022).

Municipalities are not liable under Section 1983 on the theory of respondeat superior or vicarious liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)(citing *Monell*, 436 U.S. at 694-95). Rather, under Section 1983, local governments are only responsible for their own illegal acts. *Connick v Thompson*, 563 U.S. 51, 61 (2011). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted).

To find the City of Shreveport liable under *Monell*, Hernandez must identify a policymaker and identify an official city policy that was the moving force behind the alleged constitutional rights violations. *Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023); *Monell*, 436 U.S. at 694. Further, the plaintiff must show that either (1) the policy itself violated federal law or authorized or directed the deprivation of

federal rights, or (2) the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)(citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997)).

An "official policy" means:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong*, 60 F.4th at 276 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 n.2 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts." *Peña*, 879 F.3d at 622 (citation and internal quotations omitted). Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave

rise to his own injury. *Id*. It is manifest that to find a municipality liable for a policy based on a pattern of conduct, that pattern must have occurred for so long or so frequently that the pattern of conduct warrants the attribution to the municipality of knowledge that the objectionable conduct is the expected, accepted practice of city employees. A pattern requires similarity, specificity, and sufficiently numerous prior incidents. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017). Such a pattern was not alleged here.

In this case, Hernandez does not cite a specific policy promulgated by the City of Shreveport or any of its policymakers that was the cause of his injury; instead, he pleads "[b]ecause the Defendant City has delegated all policy-making authority regarding police operations to the Chief of Police, the City is responsible for such policies or practices, or customs that have become tantamount to policies, which have been made, continued, or otherwise carried out by the Chief of Police in accordance with which the acts and omissions described herein have caused injury to the Plaintiff." Record Document 1 at 4. Accordingly, the first query is whether the chief of the Shreveport police department is a final policymaker for Defendant City. If so, Hernandez's burden becomes showing that the chief of police is responsible for a prevalent and continuing pattern or practice of police behavior that resulted in injury to Hernandez, and to plead facts establishing the plausibility of such pattern or practice by citing sufficiently numerous prior, similar incidents with specificity and context.

Courts look to state law to determine whether a named individual has final policymaking authority for an entity or institution. *St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Louisiana law provides that "[t]he superintendent of police or commanding officer of the department may adopt regulations for the government of the department except substitutes." La. Rev. Stat. Ann. § 33:2196. The Chief of Police of the Shreveport Police Department is the commanding officer for the department, and under Louisiana law is thus a policymaker for the City of Shreveport as to police administration. The query then turns to whether Hernandez has met his pleading burden regarding a pattern or practice of unconstitutional conduct. He has not.

As noted *infra* on pages 4 and 5, Hernandez cites a litany of alleged police department abuses he attributes to the police chief. Record Document 1 at 5. To satisfy the *Twombly/Iqbal* pleading requirements and survive the City's motion, he must support those allegations with some minimal factual support, sufficient to show that his claims are plausible, not just possible. Instead, he offers nothing more than the conclusory allegations listed in his complaint. *Id.* He cites no prior incidents, statistics, or anything else to support his claims.

To be sure, trying to implicate municipal liability for the actions of its employees is a high hurdle and Hernandez fails to clear it because he provides no facts beyond a recitation of the events that gave rise to his injury, which is insufficient. *Peña*, 879 F.3d at 622. All of the eight allegations contained in his complaint are "naked assertions devoid of further factual enhancement." *Iqbal*, 556

U.S. at 678. Absent any supporting facts making the claim at least plausible, rather than just possible, he does not meet his burden.

In his opposition to the City's motion, Hernandez relies on *Berk v. Choy*, 607 U.S 187 (2026), for the proposition that pleading specific facts or providing evidence to support the pleading is not required prior to discovery. Record Document 24 at 5-6. That reliance is well-meaning but misplaced. *Berk* dealt with the issue of whether a state law, requiring an affidavit of merit to be attached to any complaint alleging medical malpractice, was enforceable in a federal court. *Berk*, 607 U.S. at 189. The *Berk* court found that state law requirements do not affect the pleading requirements set forth in Federal Rules of Civil Procedure, and so no affidavit was required. *Id.*

In *dicta*, Justice Barrett noted that in the past, some Supreme Court decisions had rejected lower courts' attempt to require plaintiffs in certain situations to submit pleadings with heightened factual requirements, citing as examples *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); and *Jones v. Brock*, 549 U.S. 199 (2007). *Id*. at 194. All of those cases predate *Twombly* and *Iqbal*, which specifically heightened the pleading requirement for Rule 8(a)(2) to that of establishing a plausible case, rather than just a possible case. Justice Barrett herself cites *Twombly* for the proposition that in reviewing a pleading, "[t]he court instead asks only whether the complaint's factual allegations, if taken as true, state a claim to relief that is plausible on its face." *Id*. at 193 (internal quotations omitted). The *Berk* court correctly noted that "evidence of the claim is not required." *Id*. But as *Twombly* and

*Iqbal* and their progeny make very clear, elevating a claim from possible to plausible does require enhanced fact pleading. There must be enough facts supporting the allegation to show that the plaintiff is entitled to relief. In this case, that would require facts supporting the claim of a long-standing pattern or practice of behavior sufficient to put the City of Shreveport on notice of those practices, and that the City was deliberately indifferent to the consequences of those practices. "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3.

To summarize, the issue currently before the Court is whether Hernandez has stated a plausible claim under *Monell* that the Chief of Police of the Shreveport Police Department has informally promulgated, or at least known about and tolerated, unconstitutional practices by Shreveport police officers sufficiently similar, numerous and long-standing so that such practices could be deemed official policies of the City of Shreveport. He has not. Hernadez has failed to meet its burden under *Twombly* and *Iqbal*, and those claims are dismissed.

**Conclusion**

For the foregoing reasons, **IT IS ORDERED** that the motion for judgment on the pleadings filed by defendant, City of Shreveport, Record Document 22, is **GRANTED**. Plaintiffs' federal *Monell* claims against the City of Shreveport are **DISMISSED**. Plaintiff's federal and state law claims against defendant, Officer

Ouzts, as well as plaintiff's state law claim against the defendant, City of Shreveport, remain.

**DONE AND SIGNED** at Shreveport, Louisiana, this 17th day of September, 2026.

Alex C. Van Hook

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE